USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/25/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

x

SKENDER ADEMI, *on behalf of himself and all others similarly situated*,

Plaintiff,

-against-

No. 22 Civ. 8535 (CM)

CENTRAL PARK BOATHOUSE, LLC, and DEAN POLL,

Defendants.

x

**DECISION AND ORDER**

McMahon, J.:

Plaintiff Skender Ademi ("Plaintiff") brings this putative collective and class action on behalf of current and former front-of-the-house tipped employees, including captains, assistants, bartenders, bussers, runners, and servers, who were employed by Defendants within the last six years ("Covered Employees"), against Defendants Central Park Boathouse, LLC, and Dean Poll (together, "Defendants"). The complain seeks recovery for (1) unpaid wages, including overtime, due to an invalid tip credit; (2) unreimbursed costs for maintenance of uniforms; and (3) unpaid wages due to improper meal credit deductions; all in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York Labor Law ("NYLL"), as well as (4) Defendant's failure to provide proper wage statements, in violation of NYLL § 195. Plaintiff also brings a claim against Defendants for (5) unlawful retaliation against him in violation of FLSA and NYLL.

On March 23, 2023, Plaintiff filed this motion seeking (1) conditional certification of a collective action under the FLSA;[1] (2) court authorized notice of this FLSA action pursuant to section 216(b) of the FLSA; (3) court approval of the proposed FLSA notice of this action and the proposed consent forms of opt-in plaintiffs; (4) an order directing Defendants to produce the names, social security numbers, titles, compensation rates, dates of employment, last known mailing addresses, email addresses and all known telephone numbers for all current and former tipped front-of-the-house employees employed by Defendant within the last six years; (5) an order directing Defendants to post the court-authorized notice, along with the consent forms, in a conspicuous location at Defendants' place of business; and (6) equitable tolling of the FLSA statute of limitations until Plaintiff is able to send notice to potential opt-in plaintiffs. Defendants oppose the conditional certification of the collective action.

For the following reasons, Plaintiff's motion is GRANTED in significant part. The court needs additional information before directing the posting of notice, for reasons set forth below.

**BACKGROUND**[2]

Defendant Central Park Boathouse, LLC is a New York corporation with a principal place of business in New York. (Compl. ¶ 9). Defendant Dean Poll ("Poll") is alleged to be the "current" owner and operator of Central Park Boathouse, LLC (*Id.* ¶ 10).

---

[1] Plaintiff does not currently seek class certification of his state law claims under the Federal Rules of Civil Procedure Rule 23.

[2] The following facts, assumed to be true for purposes of the instant motion, are drawn from the allegations in the Complaint, Docket No. 1, and the declaration filed by Plaintiff in support of his motion, Docket No. 23-3 ("Ademi Decl."). At the conditional certification stage, the Court may not "resolve factual disputes" or "make credibility determinations." *Costello v. Kohl's Illinois, Inc.*, No. 13 Civ. 1359(GHW), 2014 WL 4377931, at *7 (S.D.N.Y. Sept. 4, 2014) (quoting *Lynch v. United Servs. Auto. Ass'n,* 491 F.Supp.2d 357, 368 (S.D.N.Y. 2007) (internal quotation marks omitted)). Accordingly, in resolving the collective certification motion, the Court assumes all facts alleged by plaintiffs to be true. However, some of the facts alleged are impossible to accept as true, given the highly publicized closure of the Loeb Boat House (pleaded in the complaint) and its reopening under entirely different management nine months later (not recited in the complaint).

Defendants are alleged to have owned and operated the restaurant known as the Loeb Boathouse (the "Restaurant") located at Park Drive North, E 72nd Street, New York, NY 10021 (*Id.* ¶ 8). Poll allegedly controlled and managed significant functions of, and/or owns(owned) Defendant Corporation. He allegedly determined wages, compensation, work schedules, and hiring and firing for employees, including Plaintiff, at the Restaurant. (*Id.* ¶ 10.)

The Restaurant closed on October 16, 2022. (Ademi Decl. ¶ 1). The complaint contains no allegations about its reopening, but it is well known in New York City that the facility reopened last summer under a 10 year concession from the City of New York. Poll is no longer the operator of the facility; it is now being run by Legends Hospitality, which, among other things, provides hospitality services at Yankee Stadium. *See Central Park's Loeb Boathouse reopens for summer — take a look at the new menu*, NBC NEW YORK (June 19, 2023), https://www.nbcnewyork.com/news/local/central-parks-loeb-boathouse-reopens-for-summer-take-a-look-at-the-new-menu/4435487/.

From in or around January 2011 until October 16, 2022, Plaintiff was employed as a server at the Restaurant. (Compl. ¶ 27; Ademi Decl. (Dkt. No. 23-3) ¶ 1). Throughout his employment, Plaintiff was scheduled to work seven (7) hours per day for five (5) days per week for a total of thirty-five (35) hours each week. (Compl. ¶ 28). However, two (2) or three (3) days per week, Defendants had Plaintiff work double shifts, i.e., fourteen (14) hours per day. (*Ibid.*). As a result, Plaintiff often worked forty-nine (49) or fifty-six (56) hours per week. (*Ibid.*). In Plaintiff's Declaration, he provides a list of the first names of six other servers who were also scheduled to work similarly: "Angel [LNU]," "Taualt [LNU]," "Flamur [LNU]," "Adnan [LNU]," "Enkel [LNU]," and "Sany [LNU]." (Ademi Decl. ¶ 3). Plaintiff notes the list of names does not include all the employees who were subject to the same policy. (*Id.*).

Plaintiff alleges that Defendants maintained a policy of paying tipped front-of-house employees tip-credited wages without providing notice that tip credits would be taken against their wages. Plaintiff asserts that, throughout his employment, Defendants paid Plaintiff below the New York minimum wage and overtime rate for tipped workers based on a tip credit, but without giving him notice that a tip credit was being taken against his wages. (Compl. ¶¶ 29-30). In support of his motion, Plaintiff attaches reproductions of pay stubs generated between 2016 and 2020, which show that Plaintiff was paid at an hourly rate and overtime rate lower than the NYC Minimum Wage for that year. (Mot. for Cond. Cert. at 10 (Dkt. No. 23); Dkt. No. 23-2 at 2-8). Based on Plaintiff's personal observations and conversations with his named and unnamed co-workers, the other tipped front-of-house employees were also paid below the New York minimum wage and overtime rate based on tip credit and never provided with tip credit notices. (Ademi Decl. ¶ 5).

Plaintiff also alleges that Defendants maintained a policy of claiming a tip credit for all hours that tipped front-of-house employees worked, despite the fact that those employees had to take on non-tipped duties for more than 20% of the total hours they worked each week. (Comp. ¶ 31; Ademi Decl. ¶ 8). Specifically, Defendants had Plaintiff spend more than 20% of his working time on non-tip related activities, such as polishing silverware, cleaning stations, and rolling napkins. (Ademi Decl. ¶ 8). Based on his observations and conversations with his named and unnamed co-workers, other tipped front-of-house employees were similarly required to spend more than 20% of their working time on non-tipped related activities. (*Ibid.*). Plaintiff and his co-workers were required to do even more non-tipped "sidework" during holidays. (*Ibid.*).

Plaintiff further alleges that Defendants maintained a policy requiring all tipped front-of-house workers to maintain their own uniforms throughout their employment, without providing

proper reimbursement for that cost. (Compl. ¶ 33). Plaintiff and the other employees were

required to maintain at least five shirts and five pair of pants per week. (Ademi Decl. ¶ 10).

However, Plaintiff asserts that he and the other employees were only provided ten dollars per

week to offset uniform cleaning costs. (*Ibid.*). Plaintiff's reproduced pay stubs indicate he was

paid between $7.10 and $18.65 per week for uniform reimbursement over the course of his

employment. (Dkt. No. 23-2). Plaintiff asserts this compensation was insufficient to cover the

costs of maintaining uniforms; Plaintiff personally had to spend forty dollars per month dry

cleaning and pressing his uniforms. (*Ibid.*). Based on his observations and conversations with his

named and unnamed co-workers, other employees were similarly required to maintain their

uniforms at their own expense. (*Ibid.*).

Finally, Plaintiff alleges that Defendants maintained a policy of deducting improper meal

credits from the wages of all tipped front-of-house wages. (*Id.* ¶ 34). These deductions exceeded

the reasonable cost of the meal and were made whether the employees consumed the credited

meals or not. (*Ibid.*). The meals that were provided were often inedible and failed to contain food

from the four food groups: (i) fruits or vegetables; (ii) grains or potatoes; (iii) eggs, meat, fish,

poultry, dairy, or legumes; and (iv) tea, coffee, milk, or juice, as required by New York State

law. (*Ibid.*). His co-workers "Taulat," "Flamur," and "Sany" would often complain that the food

would make them ill. Plaintiff asserts that meals often consisted of  unsold chicken and seafood

leftovers from restaurant service. (Ademi Decl. ¶ 12-13). Based on his observations, as well as

conversations with his named and unnamed co-workers, other employees similarly had

deductions taken from their wages for these inadequate meals. (*Id.* ¶ 13).

        While Defendants argue that Plaintiff was reimbursed for any meal credit deducted, (Dkt. No. 31 at 9-10), in at least some of the pay stubs reproduced in Plaintiff's Declaration, the stated reimbursement was not actually included in Plaintiff's compensation.

For example, for the week starting September 12, 2016, the pay stub lists for deductions: a $1394 deduction for cash tips, $9.70 deduction for union dues, and $7.50 for a meal credit deduction. This adds up to $1411.20 and that is indeed the amount listed as the total deductions from Plaintiff's pay. In the section on "earnings," the pay stub lists: $243.26 of regular wages, $1394 of cash tips, a $9 uniform allowance, and a $7.50 meal credit. Together, this should add up to $1653.76 in total earnings. However, the pay stub indicates that the total earnings for this period was $1646.26, $7.50 less than what it should be. So, while the meal credit reimbursement was *listed* in the earnings section of Plaintiff's pay stub, this reimbursement was not included in Plaintiff's ultimate compensation. So, for at least some of his pay stubs, the meal credit was deducted from Plaintiff's wages and not reimbursed.

Plaintiff moves for conditional certification of the collective class and Defendant opposes the motion.

## DISCUSSION

### I. Certification of a Conditional Collective Action Pursuant to the FLSA §216(b)

#### A. FLSA and Collective Actions

The FLSA requires employers to compensate their employees "not less than one and one-half times the regular rate at which [the employee] is employed" for each hour worked in excess of forty hours per workweek, 29 U.S.C. § 207(a)(1). FLSA § 216(b) creates a private right of action for employees to recover any unpaid overtime if their employers violate FLSA § 207. § 216(b) also provides employees with the option of bringing a collective action against their employer:

> An action ... may be maintained against an employer ... in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Collective actions were created to promote the "efficient adjudication of similar claims, so 'similarly situated' employees, whose claims are often small and not likely to be brought on an individual basis, may join together and pool their resources to prosecute their claims." *Lynch v. United States Auto. Ass'n*, 491 F.Supp.2d 357, 367 (S.D.N.Y. 2007) (citing *Hoffmann–La Roche Inc.v. Sperling*, 493 U.S. 165 (1989)). Unlike Federal Rules of Civil Procedure Rule 23 class actions, FLSA collective actions require similarly situated employees to affirmatively opt-in and be bound by any judgment. *Myers v. Hertz Corp.*, 624 F.3d 537, 542 (2d Cir. 2010).

There are three essential features of a collective action bought under FLSA § 216(b). First, an employee must "opt-in," which means the employee must consent in writing to be included in the action and the consent must be filed in court. Second, "the statute of limitations runs on each employee's claim until his individual consent form is filed with the court." Third, courts may order notice to be sent to potential similarly situated employees "to inform them of the opportunity to opt-in the case." *Lynch,* 491 F.Supp.2d at 367.

**B. The Second Circuit's Two-Step Process for Certifying a Collective Action**

In the Second Circuit there is a two-stage process for deciding whether certification is proper. *See*, *Myers*, 624 F.3d at 554–54; *Hamadou v. Hess Corp.*, 915 F.Supp.2d 651, 660 (S.D.N.Y. 2013); *Lynch*, 491 F.Supp.2d at 367–68. In the first stage, the court looks at the pleadings and affidavits filed with the court to determine if plaintiff satisfies "the minimal burden of showing that the similarly situated requirement is met." *Lee v. ABC Carpet & Home*,

236 F.R.D. 193, 197 (citing *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)); *see also*, *Myers*, 624 F.3d at 555; *Hamadou*, 915 F.Supp.2d at 660. If the court finds that the plaintiff has shown that potential opt-in employees are similarly situated, the court will conditionally certify the collective action, send notice to the potential collective plaintiffs, and extend to those potential plaintiffs an opportunity to opt-in to the collective action. *See*, *Hamadou*, 915 F.Supp.2d at 660; *Iglesias–Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 367 (S.D.N.Y. 2007).

The second stage occurs after discovery. At that point, the court examines the record and "undertakes a more stringent factual determination as to whether members of the class are, in fact, similarly situated." *Lynch*, 491 F.Supp.2d at 368; *see also*, *McGlone v. Contract Callers, Inc.*, 867 F.Supp.2d 438, 442 (S.D.N.Y. 2012). If the court determines that the collective members and the named plaintiff are not similarly situated, then the court may de-certify the collective action and dismiss the claims of the opt-in plaintiffs without prejudice. *Lynch*, 491 F.Supp.2d at 368 (citing *Iglesias–Mendoza*, 239 F.R.D. at 367).

Because Plaintiff's motion is for conditional certification of the collective action, the Court only needs to determine if Plaintiff and the potential collective members are similarly situated on a preliminary basis.

**C. Standard for Conditional Collective Action Certification**

The FLSA does not define the term "similarly situated." *Iglesias–Mendoza*, 239 F.R.D. at 367. However, courts have held the plaintiff's "burden for demonstrating that potential plaintiffs are similarly situated is very low at the [initial] stage." *Lynch*, 491 F.Supp.3d at 368. This low burden serves the "broad remedial purpose of the FLSA." *Hamadou*, 915 F.Supp.2d at 661 (quoting *Raniere v. Citigroup*, 827 F.Supp.2d 294, 319 (S.D.N.Y. 2011) rev'd and remanded on other grounds, 533 F. App'x. 11 (2d Cir. 2013)).

In order to adequately show that potential collective members are similarly situated in the first stage, plaintiffs only need to make "a modest factual showing ... to demonstrate that ... the potential [collective members and the plaintiff] together were victims of a common policy or plan that violated the law." *Iglesias–Mendoza*, 239 F.R.D. at 367–68 (quoting *Realite v. Ark Rest. Corp.*, 7 F.Supp.2d 303, 306 (S.D.N.Y. 1998)); *see also*, *Hamadou*, 915 F.Supp.2d at 661; *Indergit v. Rite Aid Corp.*, No. 08 Civ. 9361(PGG), 2010 WL 2465488 at *3 (S.D.N.Y. June 16, 2010).

However, although Plaintiff's burden at this stage is low, "it is not non-existent," and he cannot rely upon "unsupported assertions." *Id.* (quoting *Ali,* 2013 WL 1245543, at *2). In assessing the adequacy of a plaintiff's showing, district courts look to pleadings, affidavits, and declarations, but often authorize notice based "solely on the personal observations of one plaintiff's affidavit." *Hernandez v. Bare Burger Dio Inc.,* No. 12–cv–7794 (RWS), 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) (collecting cases).

At the initial stage, courts do "not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Lynch*, 491 F.Supp.2d at 368. *See also*, *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997); *Shajan v. Barolo, Ltd.*, No. 10 Civ. 1385(CM), 2010 WL 2218095 at *1 (S.D.N.Y. June 2, 2010). In fact, courts do not weigh the merits of the underlying claims to determine whether potential members are similarly situated. *Lynch*, 491 F.Supp.2d at 368; *see also Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005).

Most significantly, the standards for class certification under Federal Rules of Civil Procedure Rule 23 do not apply to FLSA collective actions. *Lynch*, 491 F.Supp.2d at 369. Therefore, in order to certify a collective action under the FLSA, Plaintiff does not need to show

numerosity, typicality, community, or adequacy of representation. *Id.*; *Iglesias–Mendoza*, 239 F.R.D. at 369.

**D. Plaintiff has met the similarly situated requirement for conditional certification of a collective action**

Plaintiff seeks a conditional certification of a collective action on behalf of similarly situated employees who served as front-of-the-house tipped employees — including captains, assistants, bartenders, bussers, runners, and servers — at the Restaurant. Courts have routinely certified conditional collective actions based on the plaintiff's affidavit declaring they have personal knowledge that other coworkers were subjected to similar employer practices. *See, Guo Qing Wang v. H.B. Rest. Grp., Inc.*, No. 14-CV-813 CM, 2014 WL 5055813, at *4 (S.D.N.Y. Oct. 7, 2014); *Iglesias–Mendoza,* 239 F.R.D. at 368; *Sanchez v. Gansevoort Mgmt Grp., Inc.,* No. 12 Civ. 75(KBF), 2013 WL 208909 at *1 (S.D.N.Y. Jan. 10, 2013); *Hernandez v. Bare Burger Dio Inc.,* No. 12 Civ. 7794(RWS), 2013 WL 3199292 at *3 (S.D.N.Y. June 25, 2013); *Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.,* No. 12 Civ. 265(PAE), 2012 WL 1981507 at *1 (S.D.N.Y. June 1, 2012); *Harhash v. Infinity W. Shoes, Inc.,* No. 10 Civ. 8285(DAB), 2011 WL 4001072 at *3–4 (S.D.N.Y. Aug. 25, 2011).

Here, Plaintiff asserts that he was paid below the New York tip minimum wage and overtime rate but was never provided notice that Defendants would be taking a tip credit from his wages. (Compl. ¶ 29; Ademi Decl. ¶¶ 5-7). He also asserts Defendants claimed tip credit for all hours that he worked even though he performed non-tipped duties — such as polishing silverware, cleaning stations, and rolling napkins — for more than 20% of his worked hours. (Ademi Decl. ¶ 8). He further asserts that he was required to maintain his own uniforms throughout his employment without proper reimbursement (Ademi Decl. ¶ 10). Finally, he

asserts that Defendants improperly deducted a meal credit from his wages for a meal that did not meet the requirements of New York State law. (Ademi Decl. ¶¶ 12-13).

Plaintiff also declares he has personal knowledge from his observations — over the course of his eleven years of employment at the restaurant — and his conversations with his named and unnamed coworkers that "all tipped front-of-house employees" (1) were paid a low tip-credited wage but were not provided notice that a tip credit would be taken against their wages; (2) had a tip credit deducted from their wages for all hours worked even though they performed non-tipped duties for more than 20% of their worked hours; (3) had to maintain their uniforms without proper reimbursement; and (4) had meal credits improperly deducted from their wages. (Ademi Decl. ¶¶ 5-8, 10, 12-13).

At this preliminary certification stage, plaintiff has satisfied his minimal burden of showing that he is "similarly situated" to the proposed class members. All of the proposed class members are current or former tipped front-of house employees. In his declaration, plaintiff sets out a factual basis for his claims of common policies of depriving tipped front-of-house workers of wages, failing to reimburse workers for uniform maintenance, and deducting improper meal credits. Plaintiff has adequately alleged that he and his proposed class members were subjected to common wage practices that violated the FLSA. Having done so, he is entitled to proceed in a representative capacity.

Ignoring the applicable standard for conditional certification of a collective action, Defendants tries to defeat Plaintiff's motion by arguing that Plaintiff had proper notice of the Restaurant's tip credit policy, that he has failed to plead sufficient facts to support his allegations, that Plaintiff's declaration contains false statements and by submitting their own evidence that all employees were paid according to the law. However, Plaintiff has met his

pleading burden, and, at this initial stage, the Court does not resolve any factual disputes. *Pippins v. KPMG LLP,* No. 11 Civ. 0377(CM(JLC), 2012 WL 19379 at *12 (S.D.N.Y. Jan. 3, 2012). "[I]f [P]laintiff's allegations are sufficient on their face to support conditional certification, ... Defendant may not defeat the Plaintiff's motion by presenting conflicting factual assertions." *Jeong Woo Kim v. 511 E. 5th St., LLC,* 985 F.Supp.2d 439, 449 (S.D.N.Y. 2013). While Defendants complain that plaintiff's allegations are made "solely" on personal observations and conversations and that there are "no facts or specifics substantiating" the plaintiffs' factual allegations, which defendants characterize as "conclusory," the case law is clear that the affidavit of a single employee can be enough to meet the evidentiary burden. *See Cheng Chung Liang v. J.C. Broadway Rest., Inc.*, 2013 WL 2284882, at *2–3 (S.D.N.Y. May 23, 2013).

However, Defendants raise one valid point: Plaintiff seeks to form a class including "captains" and "assistants," which per Defendants are not jobs that exist at the Restaurant — or at least, that existed when they ran the Restaurant. Plaintiff does not contest this point. (Dkt. No. 31 at 17). Accordingly, "captains" and "assistants" are deemed stricken as proposed class members.

Plaintiff has otherwise satisfied the low burden that he is similarly situated with the proposed class members.

Therefore, at this preliminary stage, Plaintiff's motion for conditional certification of a collective action is GRANTED.

The proposed class purports to cover "current" employees at the restaurant. That is fine insofar as the word "current" means on the day the complaint was filed – October 6, 2022, shortly before the Restaurant closed. However, the court will not include in any conditionally

certified class any person who is "currently" (as in, today, September 25, 2023) employed at the Loeb Boathouse, unless that individual was also employed there prior to the Restaurant's closing on October 16, 2022. The new concessionaire, Legends Hospitality, is not a defendant in this lawsuit; even on a minimal showing, no one employed at the Restaurant from and after its reopening under new management in June 2023 is "similarly situated" to Plaintiff. So the conditionally certified class consists of all persons who occupied the jobs of bartenders, bussers, runners, and servers from October 6, 2019 to and including the date on which the Restaurant as managed by Defendants closed (which I believe was October 16, 2022).

**II. Notice**

Even though FLSA § 216(b) does not expressly mention court-authorized notice for potential similarly situated employees, it is "well settled that district courts have the power to authorize an FLSA plaintiff to send such notice." *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F.Supp.2d 101, 103–04 (S.D.N.Y. 2003) (internal citations and quotations omitted); *see also*, *Hoffman*, 982 F.Supp. at 261 ("District courts have the discretionary power to authorize the sending of notice to potential class members in a collective action brought pursuant to § 216(b) of FLSA."); *Hoffman–La Roche Inc.*, 493 U.S. at 174; *Morales v. Plantworks, Inc.*, No. 05 Civ. 2349(DC), 2006 WL 278514 at *2 (S.D.N.Y. Feb. 2, 2006). "[C]ourts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management." *Hoffman*, 982 F.Supp. at 262. The threshold question before authorizing notice is "whether [P]laintiff [has] demonstrated that potential class members are similarly situated." *Id.* at 261. Therefore, since the Court has already held that Plaintiff satisfied his burden of showing that he is similarly situated with potential class members, Plaintiff's request for notice is authorized.

**A. Class Definition and Statute of Limitations**

Plaintiff alleges that he has personal knowledge that all tipped front-of-house employees, including current and former captains, assistants, bartenders, bussers, runners and servers, were subjected to the similar wage and hour practices by the Defendants. However, as mentioned, "captain" and "assistant" are not jobs at the Restaurant. Thus, the Court will certify the collective class, but only for bartenders, bussers, runners, and servers.

Plaintiff also argues that it is appropriate for this Court to certify the FLSA opt-in class for the entire six-year statute of limitations period applicable to the New York Labor Law claims. Plaintiff argues that this is "common practice" in the Second Circuit where plaintiffs assert claims under both the FLSA and the NYLL. Here he is incorrect.

The FLSA has a two-year statute of limitations, except in the case of willful violations, for which the statute of limitations is three years. *See* 29 U.S.C. § 255(a). Where willfulness is disputed, the court applies the three-year statute of limitations for purposes of certifying a representative action. *See Iglesias–Mendoza,* 239 F.R.D. at 369. Because the Defendants do not contest the appropriate time frame for the collective action, a three-year notice period is appropriate in this case.

Notice would normally be provided to those employed within three years of the date of the notice. *See* 29 U.S.C. § 255(a); *Winfield v. Citibank, N.A.*, 843 F.Supp.2d 397, 410 (S.D.N.Y.2012). "However, because equitable tolling issues often arise for prospective plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, 'with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date.' " *Winfield v. Citibank, N.A.*, 843 F.Supp.2d at 410 (quoting *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011)) (other citations omitted). In this case, I find that it is appropriate to send notice to potential

Collective plaintiffs for the three years prior to the filing of the complaint. Three years from the date of the filing of the complaint takes us back to October 6, 2019.

Some courts in this Circuit have authorized six-year notice periods citing the economy of providing notice to plaintiffs with FLSA claims who may also have NYLL claims subject to a six-year statute of limitations. *See, e.g., Schwerdtfeger,* 2011 WL 2207517, at *6; *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 410-11 (S.D.N.Y. 2012); *Gani v. Guardian Serv. Indus. Inc.,* No. 10 Civ. 4443, 2011 WL 167844, at *2 (S.D.N.Y. Jan. 13, 2011). However, other courts only permit the sending of § 216(b) notice to employees who fall in the three year window, citing, (1) the confusion caused by notifying plaintiffs who potentially have two disparate claims with different statutes of limitations and (2) the inefficiency of providing notice to plaintiffs whose claims may well be time-barred. *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 564 (S.D.N.Y. 2013).

It makes no sense to notify people about a claim that may never concern them. Since a Rule 23 claim is an opt-*out*, not an opt-*in*, claim, no person who has claims only under the NYLL will be prejudiced if the § 216(b) notice goes only to those who will benefit from receiving it. Until Plaintiff seeks Rule 23 certification — and establishes his ability to represent a class under the rigorous standard of Rule 23 — the Court thus authorizes a three-year notice period.

**B. Form of the Proposed Notice and Consent Forms**

Plaintiff has provided forms of Notice and opt-in consent to this Court. All references to "captains" and "assistants" should be stricken from both forms. All references stating that the notice period for the collective action is "any time between October 6, 2016, and the present," should be replaced with the conditionally-certified notice period, "any time between October 6, 2019, and October 16, 2022." Otherwise, the forms are approved in their entirety.

**C. Names and Addresses of Potential Opt-In Plaintiffs**

Plaintiff has also requested an Excel list of the names, social security numbers, titles compensation rates, dates of employment, last known mailing addresses, email addresses and all known telephone numbers of all the potential opt-in plaintiffs. (Dkt. No. 22 at 8-9).

"Courts within [the Second Circuit] routinely grant plaintiff's motions to compel production of the *names and addresses* of potentially similarly situated employees...." *Anglada v. Linens 'N Things, Inc.,* No. 06 Civ. 12901(CM)(LMS), 2007 WL 1552511 at *7 (S.D.N.Y. Apr. 26, 2007), *report and recommendation adopted* (May 22, 2007) (emphasis added). Such discovery has been permitted in other cases where it was relevant to the subject matter of the action, and where there were no other grounds to limit that discovery under the facts and circumstances of that suit. *See Hoffmann-La Roche,* 493 U.S. at 170, 110 S.Ct. 482 (1989); *Realite,* 7 F. Supp. 2d, at 309-10.

In this case, however, Plaintiff has asked for much more than the names and addresses of the potential opt-in plaintiffs. Plaintiff has not provided any authority granting such a comprehensive request in connection with conditional certification, nor has the Court been able to find such a case. Plaintiff suggests no reason why he requires all this information in order to send § 216(b) notice; and frankly, until a person opts into the claim, such personal information as email addresses and Social Security numbers are none of Plaintiff's business.

Only the names and current or last known addresses of class members may be provided to the Plaintiff. *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 324 (S.D.N.Y. 2007); *see also Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 564 (S.D.N.Y. 2013). The Defendants should provide this information to Plaintiff's counsel within ten days of this Order. If, in the future, many of the notice and consent forms are returned as undeliverable, Plaintiff can then make a motion and ask that the Defendants provide him with the email

addresses or other identifying information about the potential opt-in members whose Notice was returned.

**D. Posting Notice in the Restaurant**

Plaintiff requests that the Defendants post the notice, along with the consent forms, in a conspicuous location at any time during regular business hours at the Restaurant.

"Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail." *Whitehorn,* 767 F. Supp. 2d at 449. "Posting notice in the workplace maximizes potential plaintiffs' opportunities to be informed of the pendency of the litigation and consider whether to opt in." *Mendoza v. Ashiya Sushi 5, Inc.,* No. 12 Civ. 8629(KPF), 2013 WL 5211839 at *9 (S.D.N .Y. Sept. 16, 2013).

It is a matter of public record that the Restaurant closed (Ademi Decl. ¶ 1), and that it has reopened under entirely new management. It would not, in the opinion of the court, be appropriate to post notice at the Restaurant given that Defendants no longer operate it.

**E. Equitable Tolling**

Plaintiff finally requests that the Court toll the limitations period for the FLSA claims until such time that they can send notice to the potential opt-in plaintiffs.

Unlike in Rule 23 class actions, in a FLSA collective action the limitations period continues to run for each plaintiff until he or she files written consent with the court to join the lawsuit. 29 U.S.C. § 256(b).

A district court may toll the limitations period to avoid inequitable circumstances, giving due consideration to whether the plaintiffs have acted with reasonable diligence in pursuing their claims and whether the circumstances are extraordinary enough to warrant equitable relief. *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002).

"While plaintiffs wishing to pursue their rights cannot sit on them indefinitely, those whose putative class representatives and their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delay in rulings." *McGlone v. Contract Callers*, Inc., 867 F.Supp.2d 438, 445 (S.D.N.Y. 2012).

Due to docket congestion, this Court was unable to address Plaintiff's motion for some months after it was made. The claim should not be prejudiced by this delay. The statute of limitations will be tolled as of the date of the filing of Plaintiff's motion for conditional certification. The toll will end on the date Plaintiff sends the notice to potential opt-in plaintiffs.

**CONCLUSION**

For the foregoing reasons, the court GRANTS in significant part Plaintiff's motion for conditional certification of his collective action and authorizes that notice be sent to potential Collective Plaintiffs in the form authorized by the Court pursuant to § 216(b) of the FLSA. Defendants are ordered to provide Plaintiff with the contact information detailed above for all potential Collective Plaintiffs who have occupied the jobs of bartenders, bussers, runners, and servers from October 6, 2019, through October 16, 2022. However, Plaintiff's motion is DENIED as to his request that Defendants post the notice, along with the consent forms, in a conspicuous location at the Restaurant.

The Clerk of the Court is directed to remove Docket No. 22 from the Court's list of pending motions.

Dated: September 25, 2023

U.S.D.J.

BY ECF TO ALL COUNSEL