**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKENDER ADEMI, *on behalf of himself, and all FLSA Collective Plaintiffs and the Class,*<br><br>Plaintiff,<br><br>-against-<br><br>CENTRAL PARK BOATHOUSE, LLC, and DEAN POLL<br><br>Defendants. | **Case No.:** 22-cv-08535<br><br>**PLAINTIFF'S COUNTERSTATEMENT TO DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS** |

Plaintiff SKENDER ADEMI , by his attorneys, Lee Litigation Group, PLLC, in support of his Opposition to Defendants' Motion for Summary Judgment, submits the following Response to Defendants' Statement of Material Facts, pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern District of New York:

1. The Employment Agreements, attached as Exhibit I, are signed by Bartolo Hidalgo, Bikash Barman, Ileana Marinescu, Manuel Avila, Marcell Schuller, MD Nurul Huda, Mohammed Anamul Hoque, Mohammed Mamun Roshid, Tanesha Michelle Colletti, and Tracy Teresa Shearin, respectively. (Exhibit I).

**Response:** Plaintiff admits that the referenced documents appear to bear the signatures of the referenced individuals.

2. Plaintiff has been a member of the Union since 2011. (Exhibit B, Deposition of S. Ademi 21:6-21).

**Response:** Admitted

3. Plaintiff is an experienced food service employee. (Exhibit B, Deposition of S. Ademi 24:4-15).

**Response:** There is no page 24 in Exhibit B.

4. The purported class members are members of a Union. (Exhibit B, Deposition of S. Ademi 40:23-15).

**Response:** Plaintiff does not know whether every class member was a union member and denies that his deposition testimony on page 40 even addresses the matter.

5. Plaintiff was terminated by Michael Amore and outside of the presence of Defendant Poll. (Exhibit B, Deposition of S. Ademi 72:6-15).

**Response:** Plaintiff admits that his termination was communicated to him by Amore outside the physical presence of Defendant Poll but disputes Defendants' contention that the termination decision originated with Amore rather than Poll.

6. Defendant Poll does not know Plaintiff Ademi. (Exhibit D, Deposition of D. Poll 26:22-25).

**Response:** There is no page 26 in Exhibit B. As explained by Plaintiff's Opposition and the deposition testimony cited therein, Plaintiff had direct interaction with Defendant Poll. Therefore, Plaintiff disputes the contention that Defendant Poll does not know him. *See* Declaration of C.K. Lee in Opposition to Defendants' Motion for Summary Judgment, Exhibit A (Skender Ademi Dep.) 15:15-17 ("Q. Going back to 2011 when you were hired, who hired you? A. Anthony Walton and Dean Poll."); 15:23-24 ("Q. Who did you interview with? A. With Anthony and Dean."); 66:2-7 ("Q. So would Dean Poll write you up or would it be the manager? A. Dean, and manager, but most of it Dean was more. Let's say he was coming before the shift or during the shift he would come and really stress, I mean make a big deal out of nothing."); 97:2-4 ("Q. Did you ever ask Dean Poll directly for more hours? 4 A. Yes.").

7. Defendant Poll does not recall working with Plaintiff Ademi. (Exhibit D, Deposition of D. Poll 26:22-25).

**Response:** There is no page 26 in Exhibit B. Plaintiff cannot speak to the state of Defendant Poll's recollection.

8. Plaintiff's employment documents were signed off on by Michael Amore or another general manager — but not by Defendant Poll. (Exhibit E.4, E.5, E.6).

**Response:** Plaintiff admits that some of the referenced employment records appear to have been signed by individuals other than Defendant Poll. However, some of the signatures are illegible or more consistent with a signature by Defendant Poll. For instance, the signature on the Benefits Request Form submitted on 08.22.22 (Dkt. 97-14, pg. 4 of pdf) appears like the initials "DP," which can reasonably be surmised to refer to Dean Poll and is very different from Michael Amore's signature. *See also* Dkt. No. 97-15 (page 18 of pdf).

9. Michael Amore was a general manager at Boathouse. (Exhibit B, Deposition of S. Ademi 23:12-17).

**Response:** Admitted

10. Michael Amore managed the staff and operations of Boathouse. (Exhibit B, Deposition of S. Ademi 16:16-20; 20:3-18; 22:11-23:11; 27:12-18; 74:19-77:7); (Exhibit C, Deposition of S. Iannici 13:12-16).

**Response:** Plaintiff admits that Michael Amore managed the staff and operations of Boathouse but does not admit that Amore was the sole individual to do so.

11. Michael Amore handled employee work shifts and work schedules. (Exhibit B, Deposition of S. Ademi 16:16-20; 20:3-18; 22:11-23:11; 74:19-77:7).

**Response:** Plaintiff admits that Michael Amore handled employee work shifts and work schedules but does not admit that Amore was the sole individual to do so.

12. Michael Amore handled customer complaints. (Exhibit B, Deposition of S. Ademi 16:16-20).

**Response:** Plaintiff admits that general managers handled customer complaints but does not admit that they were the only ones to do so.

13. Michael Amore oversaw different departments of Boathouse. (Exhibit B, Deposition of S. Ademi 16:16-20).

**Response:** Plaintiff admits that general managers at Boathouse "deal[t] with" different departments.

14. Michael Amore worked with the Union to create schedules and oversaw compliance with the CBA and Union regulations. (Exhibit B, Deposition of S. Ademi 20:3-18; 22:11-23:11; 74:19-77:7).

**Response:** Plaintiff admits that general managers such as Michael Amore worked with the Union to create schedules and oversee compliance with CBA/Union regulations but does not admit that general managers were the only ones to do so.

15. Plaintiff would confer with the general manager of Boathouse for vacation and sick day requests. (Exhibit B, Deposition of S. Ademi 22:11-23:11).

**Response:** Plaintiff admits that he would confer with the general manager regarding vacation and sick days but does not admit the general managers were the sole or ultimate decision-makers on these matters.

16. The general manager of Boathouse would decide if Plaintiff was granted a vacation or sick day. (Exhibit B, Deposition of S. Ademi 22:11-23:11).

**Response:** Plaintiff does not know who ultimately made each decision granting or denying a vacation or sick day request.

17. The general manager of Boathouse would provide employees with information related to pay raises. (Exhibit B, Deposition of S. Ademi 27:12-18).

**Response:** Admitted.

18. The general manager of Boathouse would delegate the daily tasks of the servers of Boathouse. (Exhibit B, Deposition of S. Ademi 74:19-77:7).

**Response:** Plaintiff admits that the general manager of Boathouse would delegate tasks to servers but does not admit that the general manager was the sole individual to do so.

19. The general manager of Boathouse controlled the way servers, busboys, bartenders, and barbacks did their jobs. (Exhibit B, Deposition of S. Ademi 74:19-77:7).

**Response:** Plaintiff admits that general managers controlled these employees but does not admit that they were the only ones to do so. As Plaintiff documents in his Opposition, Defendant Poll would write him up for alleged infractions.

20. Defendant Poll did not maintain the employee records himself. (Exhibit D, Deposition of D. Poll 52:20-21; 53:9-54:4).

**Response:** Admitted that Dean Poll stated he did not know who kept certain employee records. However, the possibility that Defendant Poll was not always involved in the day-to-day maintenance and storing of employee records does not mean he did not have ultimate control over them. *See* Dkt. No. 79-2 (Poll Dep.) at 26:6-8 ("Q. And you have access to all the employees' records at the Boathouse, right? A. I believe we do, yes.").

5

21. The employees were paid in according with the terms of the collective bargaining agreement, and Defendant Poll could not increase or decrease employee pay. (Exhibit D, Deposition of D. Poll 25:6-22).

**Response:** Plaintiff admits that Defendant Poll stated that pay was legally governed by the collective bargaining agreement but does not admit that employees were actually paid in accordance with the agreement given that Defendant Poll failed to adduce any specifics demonstrating such.

22. When Plaintiff approached Defendant Poll about adding additional hours to his schedule, he was told to discuss the matter with Amore and that he knew better. (Exhibit B, Deposition of S. Ademi 97-98: 16-25).

**Response:** Plaintiff admits that the incident described took place but does not admit that Amore was always the only individual to handle requests for additional hours *See* 98:24-25 (Q. So Michael Amore ran the schedule? 25 A. Yes, *then when* I had a problem") (emphasis added)

23. Defendant Poll delegated the operation of the establishment to others. (Exhibit D, Deposition of D. Poll 31:14-19; 60:17-24); (Exhibit C, Deposition of S. Iannici 13:12-16).

**Response:** Admitted that Defendant Poll necessarily delegated some tasks to others, given that a single individual could not possibly operate an entire restaurant unassisted.

24. According to Plaintiff's paystub dated January 5, 2022, Plaintiff Ademi made a total $314.63 above minimum wage for the hours he worked. (Exhibit E.3).

**Response:** Plaintiff cannot evaluate Defendants' statement given that they do not specify which minimum wage they are referring to (tipped v. non-tipped, federal v. state). Plaintiff also cannot identify a document in E.3 that is "dated January 5, 2022."

25. According to Plaintiff's paystubs Plaintiff averaged a total hourly wage of $38.10 per hour in 2017. (Exhibit E.3).

**Response:** The documents in E.3 do not purport to calculate the average hourly wage over an entire year.

26. According to Plaintiff's paystubs Plaintiff averaged a total hourly wage of $40.03 per hour in 2018 (Exhibit E.3).

**Response:** The documents in E.3 do not purport to calculate the average hourly wage over an entire year.

27. According to Plaintiff's paystubs Plaintiff averaged a total hourly wage of $41.31 per hour in 2019. (Exhibit E.3).

**Response:** The documents in E.3 do not purport to calculate the average hourly wage over an entire year.

28. According to Plaintiff's paystubs Plaintiff averaged a total hourly wage of $32.62 in 2020 (Exhibit E.3).

**Response:** The documents in E.3 do not purport to calculate the average hourly wage over an entire year.

29. According to Plaintiff's paystubs Plaintiff averaged a total hourly wage of $47.79 in 2021 (Exhibit E.3).

**Response:** The documents in E.3 do not purport to calculate the average hourly wage over an entire year.

30. According to Plaintiff's paystubs Plaintiff averaged a total hourly wage of $39.41 in 2022 (Exhibit E.3).

**Response:** The documents in E.3 do not purport to calculate the average hourly wage over an entire year.

31. Defendants never received any direct complaints from employees or the Union. (Exhibit D, Deposition of D. Poll 30:7-19; Exhibit B, Deposition of S. Ademi 40:23-41:17).

**Response:** Denied. Plaintiff describes an incident where employees complained to Defendants through the Union.

32. Overtime for tipped employees was calculated according to the Union CBA. (Exhibit D, Deposition of D. Poll 51:2-5).

**Response:** Plaintiff admits that Defendant Poll stated so much but does not admit that this was the case, given that Defendant Poll's testimony does not adduce anything to substantiate this claim.

33. Plaintiff complained about his wages to colleagues, who then in turn brought the alleged concerns to the Union's delegate. (Exhibit B, Deposition of S. Ademi 51:7-52:17).

**Response:** There is no page 51 in Exhibit B.

34. Plaintiff's was given notice of his regular hourly pay rate. (Exhibit E.1).

**Response:** Plaintiff admits that the documents in E.1 bearing his signature were distributed to him but denies that they satisfied the relevant legal requirements, as detailed in Plaintiff's Motion for Summary Judgment.

35. Plaintiff's was given notice of his overtime hourly pay rate. (Exhibit E.1).

**Response:** Plaintiff admits that the documents in E.1 bearing his signature were distributed to him but denies that they satisfied the relevant legal requirements, as detailed in Plaintiff's Motion for Summary Judgment.

36. Plaintiff's was given notice of the amount of tip credit taken. (Exhibit E.1).

**Response:** Plaintiff admits that the documents in E.1 bearing his signature were distributed to him but denies that they satisfied the relevant legal requirements, as detailed in Plaintiff's Motion for Summary Judgment.

37. Plaintiff's was given notice of his regular payday. (Exhibit E.1).

**Response:** Plaintiff admits that the documents in E.1 bearing his signature were distributed to him but denies that they satisfied the relevant legal requirements, as detailed in Plaintiff's Motion for Summary Judgment.

38. Plaintiff's paystubs or wage statements contained the information enumerated in items 34 through 37. (Exhibit E.1, E.3).

**Response:** E.1 and E.3 do not contain paystubs or wage notices. E.1 contains various notices. E.3 contains various "Payroll Register Summar[ies]."

39. For each week that Plaintiff worked, he was provided with a paystub or wage statement. (Exhibit E.1, E.3).

**Response:** Plaintiff admits that checks issued to him are accompanied by paystubs but denies that these paystubs satisfied legal requirements under the WTPA, for reasons detailed in his Motion for Summary Judgment.

40. Plaintiff would receive and sign the notice every year. (Exhibit B, Deposition of S. Ademi 27:19-29:8).

**Response:** There are no pages 28 and 29 in Exhibit B. Defendants' reference to "the notice" is to vague to permit a response.

41. Employees were provided with wage notice forms throughout the course of their employment. (Exhibit B, Deposition of S. Ademi 36:1-37:23).

9

**Response:** There are no pages 36 and 37 in Exhibit B. As Plaintiff argued in his own Motion for Summary Judgment, 13 out of 23 employee records produced by Defendants as part of a class sampling did not contain any documents that purported to be wage notices, and those wage notices that were distributed were legally defective. *See* Dkt. No. 78 ¶¶ 13, 14.

42. Decisions to terminate employees at Boathouse were controlled by the Union. (Exhibit B, Deposition of S. Ademi Poll 86:13-23; 90:17-91:2).

**Response:** There are no pages 86, 90, and 91 in Exhibit B. Plaintiff denies Defendants' contention. The Union could help get terminated employees reinstated under certain circumstances but Individual Defendant Poll could terminate employees without prior consultation with the Union. *See* Dkt. No. 79-2 (Poll Dep.) at 24:25-25:5. ("Q. If you wanted to, you could hire or fire employees, right? A. Yes, well, provided it's within the reason of the collective bargaining agreement which we had to adhere to").

43. The Union reinstated Plaintiff's job at Boathouse after he was terminated. (Exhibit B, Deposition of S. Ademi 72:16-25 73:2).

**Response:** Admitted.

44. Defendants never received any direct complaints from employees or the Union. (Exhibit D, Deposition of D. Poll 30:7-19; Exhibit B, Deposition of S. Ademi 40:23-41:17).

**Response:** Denied. The cited deposition testimony of S. Ademi recounts Defendant Poll receiving a complaint through the Union.

45. Plaintiff never directly expressed any objection to Defendants regarding the information provided on the notices. (Exhibit B, Deposition of S. Ademi 40:23-41:17).

**Response:** Admitted that concerns about wage notices were communicated to Defendants through the Union.

46. Plaintiff Ademi voluntarily brought a proof claim on behalf of himself and the purported class members in the amount of $4,567,439.59 in unpaid wages and salaries *In the Matter of the General Assignment for the Benefit of Creditors of Central Park Boathouse LLC Assignor to Sari B. Placona, Esq.*, 152223/2024. (Exhibit G, Proof of Claim).

**Response:** Admitted.

47. The Proof of Claim signed by counsel for Plaintiff Ademi expressly states that Plaintiff Ademi "Submits to and acknowledges the subject matter and person jurisdiction of the above mentioned Supreme Court of the State of New York." (Exhibit G, Proof of Claim).

**Response:** Plaintiff denies that the document submitted by Defendants as Exhibit G contains this language.

48. On October 24, 2024, Assignee Sari B. Placona requested that the court approve settlement of all of Plaintiff Ademi's claims for the total of $1,000.00. (Exhibit F, *Affirmation of Assignee Sari B. Placona in Support of Order Granting Approval of Final Account*, ¶ 26.).

**Response:** Plaintiff denies that ¶ 26 contains such language, as it is merely a list of priority claims. Plaintiff admits that the referenced proceeding settled Plaintiff's claim against the assets assigned to Assignee Placona but denies that the proceeding had the legal power to settle Plaintiff's FLSA and NYLL claims against Defendants themselves.

49. Plaintiff was duly served with copies of the Motion papers of Assignee Placona. (Exhibit H, Affidavit of Service).

**Response:** Admitted

50. Upon receipt of Assignee Placona's application, Plaintiff Ademi did not object, oppose, or request a hearing regarding the underlying wage claims. See Docket, *In the Matter of*

*the General Assignment for the Benefit of Creditors of Central Park Boathouse LLC Assignor to Sari B. Placona, Esq.*, 152223/2024.

**Response:** Admitted, given that that the underlying wage claims were being adjudicated in this Court. ¶ 28 of the Affidavit in Defendants' Exhibit F expressly states that Plaintiff's wage claims are "being disputed in the Southern District of New York."

51. According to her Affirmation, Assignee Placona indicates that "the Assignee intends to pay $1,000.00 to Ademi in satisfaction of his claim." (Exhibit F, Affirmation of Assignee Sari B. Placona in Support of Order Granting Approval of Final Account, ¶ 28).

**Response:** Admitted that $1,000 was intended to satisfy Plaintiff's claims against the Assignment for the Benefit of Creditors fund, as shown by the subsequent language in ¶ 28: "The Assignee shall then pay the other priority creditors and Ademi a pro rata share of remaining funds after administrative and commission costs."

52. On November 13, 2024, with Plaintiff Ademi's knowledge, the court approved Assignee Placona's Final accounting in its entirety and declared Central Park Boathouse, LLC dissolved under state law. (Exhibit F, Order, ¶¶ 1, 2, 11).

**Response:** Plaintiff admits that he became aware of the Order but denies that he had prior knowledge of it before it was issued.

53. Plaintiff Ademi expressly stipulated that he did not have any objections to the November 13, 2024 Order, *In the Matter of the General Assignment for the Benefit of Creditors of Central Park Boathouse LLC Assignor to Sari B. Placona, Esq.*, 152223/2024. (Stipulation, Exhibit L).

**Response:** Admitted that Plaintiff had no objection to the Order other than the provision authorizing the Assignee to destroy all books and records.

Dated: New York, New York

December 20, 2024

Respectfully submitted,

LEE LITIGATION GROUP, PLLC

By:  */s/ C.K. Lee*

C.K. Lee, Esq. (CL 4086)
Lee Litigation Group, PLLC
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel: (212) 465-1188
Fax: (212) 465-1181

*Attorneys for Plaintiffs, FLSA Collective Plaintiffs and the Class*

13