UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————X

SKENDER ADEMI, on behalf of himself, FLSA
Collective Plaintiffs, and the Class,

                    Plaintiff,

         -against-                                    22-cv-8535 (CM)

CENTRAL PARK BOATHOUSE, LLC, and
DEAN POLL,

                    Defendants.

———————————————————————————X

**DECISION AND ORDER**

McMahon, J.:

This is a wages and hours action, brought as both a collective action pursuant to the Fair

Labor Standards Act (FLSA), 29 U.S.C. § 201 *et. seq.*, and as a Fed. R. Civ. P. 23 class action

pursuant to New York Labor Law (NYLL), 12 N.Y. Comp. Codes R. & Regs. § 146-1 *et. seq.,*

against the now defunct Central Park Boathouse, LLC ("Central Park Boathouse") and Dean Poll

"an owner of [Central Park] Boathouse," Dkt. No. 15, ¶ 8.[1] The defendant LLC operated a

restaurant/event space located in the Loeb Boathouse in Central Park in Manhattan, prior to the

venue's closure, which occurred on October 16, 2022. Plaintiff alleges that he and members of

his class are entitled to recover for unpaid wages, including overtime, due to an invalid tip credit,

under both the FLSA and NYLL. Dkt. No. 1. ¶¶ 1-2.

---

[1]  The parties have not clarified what this means: as I understand it, the physical structure known as the Loeb
Boathouse is owned by the City of New York, while Central Park Boathouse, LLC is a limited liability company,
which means it has one or more members who are its "owners." Poll testified that his wife held a 1% interest in
the Boathouse, *see* Dkt. No. 97-6, at 26; the record contains no information about any other members of the LLC.

On September 25, 2023, this Court entered an order conditionally certifying the FLSA claims as a collective action (an action that requires plaintiffs to opt-in to participate). Dkt. No. 39. Plaintiff's counsel distributed collective notices to potential opt-in plaintiffs, Dkt. No. 51, and twenty-seven individuals opted in ("Opt-in Plaintiffs," together with Ademi, the "FLSA Collective Plaintiffs"), *see* Dkt. No. 51-1. Since that time, those individuals have been full parties in this case to the extent of their FLSA claims. The Lee Litigation Group, PLLC ("Lee Litigation Group"), counsel for Ademi, has been their lawyer for this purpose,  no less than it has been Ademi's lawyer.

The New York Labor Law claims are not encompassed in the conditional certification order; they were brought, not as a collective action, but as a class action governed by Fed. R. Civ. P. 23. After conditional certification of the FLSA Collective, but before certification of any NYLL class under Rule 23, the Court was confronted with a flurry of dispositive and procedural motions from both Defendants and Plaintiff – Dkt. Nos. 73, 76, 93 and 97 – all made against the backdrop of a uniquely New York special proceeding. This decision disposes of all those motions.

For the reasons stated below, Plaintiff's Motion to Certify Class and Appoint Class Counsel, Dkt. No. 73, is DENIED; Plaintiff's Motion for Partial Summary Judgment, Dkt. No. 76, is DENIED; Defendants' Motion to Dismiss, Dkt. No. 93, is DENIED AS MOOT; and Defendants' Motion for Summary Judgment, Dkt. No. 97, is GRANTED IN PART and DENIED IN PART to the extent set forth below.

## BACKGROUND

### A.     The New York State Supreme Court Action

New York law provides that an entity wishing to wind up its business affairs may assign all of its assets to a Trustee-Assignee for the benefit of its creditors. N.Y. Debtor and Creditor Law Ch. 12, Art. 2 §§ 2-24. When so assigned, the Assignee has bankruptcy trustee-like powers to obtain adjudication of claims against the Debtor-Assignor in the New York State Supreme Court via an Assignment for the Benefit of Creditors proceeding ("ABC Proceeding"), after which, the court can order dissolution of the corporation under state law. N.Y. Bus. Corp. Law § 1008. Unlike a bankruptcy, an ABC Proceeding does not result in a discharge of all a creditor's pre-filing obligations. However, an ABC Proceeding can provide a forum for the final adjudication of claims asserted against the Assignor. N.Y. Debtor and Creditor Law, Ch. 12, Art. 2, § 15.

On or about March 12, 2024 – after conditional certification of the FLSA Collective and identification of the Opt-in Plaintiffs, but before any steps were taken to certify a NYLL class – Central Park Boathouse filed a petition with the New York State Supreme Court, County of New York, seeking an order commencing an ABC Proceeding.  The New York State Supreme Court promptly entered an order granting the petition, commencing the ABC Proceeding and appointing attorney Sari B. Placona as the Assignee. *See In the Matter of the General Assignment for the Benefit of Creditors of Central Park Boathouse, LLC, Assignor to Sari B. Placona, Esq. Assignee,* Index No. 152223/2024, Dkt. No. 93-1 at 28-31.

The New York State Supreme Court directed the Assignee to solicit and advertise for creditors of Central Park Boathouse to file claims against its estate. *See* Dkt. No. 93-1, at 28-31. Ademi was among the potential creditors who received notice of the pendency of the proceeding. He was invited to submit a proof of claim therein. On July 24, 2024, counsel for Ademi submitted

3

a proof of claim asserting a claim on behalf of "Skender Ademi and purported Class Members" in the amount of $4,567,439.59 – the same amount Ademi seeks on behalf of his proposed class and the FLSA Collective in this Court. *See* Dkt. No. 98-2. Ademi and his counsel were aware of the identities of potential class members – especially the twenty-seven persons who had opted into the collective action, but also other employees who had received notice of the FLSA action but who had elected not to opt in. All of those individuals were "purported Class Members." But Ademi and his lawyers did not list their names on his notice of claim, so no claim was filed in the name of any of them. Nor does the record contain any evidence that those known individuals were notified (whether by the Lee Litigation Group or by the Assignee) about the pendency of the ABC Proceeding.

On October 24, 2024, the Assignee filed an affirmation in which she "disputed the validity and total amount declared on the Ademi claim," and noted that the claim was in the process of being litigated. Dkt. No. 98-3. However, "to bring finality to this matter, the Assignee intends to pay $1,000 *to Ademi* in satisfaction of *his claim*." Dkt. No. 98-3 (Emphasis added).

Ademi accepted the Assignee's offer. He did not object, oppose the final accounting, or request a hearing regarding the proof of claim he filed in the ABC Proceeding. Indeed, on November 19, 2024, counsel for Ademi signed a "Stipulation Resolving Order to Show Cause Filed by Proposed Intervenor," pursuant to which the Assignee agreed not to "destroy any books, records or papers in her possession and control as related to Assignor, Central Park Boathouse." Dkt. No. 98-4. In consideration for this promise by the Assignee, the parties agreed as follows:

> IT IS HEREBY STIPULATED AND AGREED that Ademi has no further objections to the Order entered by [the New York State Supreme Court] on November 13, 2024 approving/settling the final accounting.

4

Dkt. No. 98-4. Six days earlier, the final accounting in the ABC Proceeding was approved and Central Park Boathouse was declared dissolved under state law. As far as this court knows, Ademi got his $1,000.

As of November 13, 2024, Central Park Boathouse is effectively judgment-proof. All of its assets have been distributed to various creditors, and it no longer exists as a corporate entity. This does not mean that it cannot be sued; dissolution does not prevent that. S*ee* Business Corporation Law (BCL) § 1006(B) ("The dissolution of a corporation shall not affect any remedy available to or against such corporation . . . for any right or claim existing or any liability incurred before such dissolution."). However, any such lawsuit would be highly unlikely to lead to any recovery for the suing party.

### B.    The Current Action

Against the backdrop of the ABC Proceeding, we have the current action.

Ademi filed his complaint, Dkt. No. 1., on October 6, 2022 – long before the commencement of the ABC Proceeding on March 12, 2024. Ademi moved to conditionally certify the FLSA Collective on March 23, 2023, Dkt. No. 21, and I granted the motion on September 25, 2023. Dkt. No. 39. For a full statement of the facts underlying this lawsuit, the reader is referred to the Court's decision and order at Dkt. No. 39. All of this took place before commencement of the ABC Proceeding.

On February 16, 2024 – still prior to commencement of the ABC Proceeding – counsel for Ademi timely submitted to the Court the twenty-seven consent to sue forms returned by the Opt-in Plaintiffs. Dkt. Nos. 51, 51-1. Thus, as of that date, Ademi and his attorneys were aware of the identities of at least twenty-seven persons, in addition to Ademi, who wished to assert claims

5

against the Central Park Boathouse. And as of that date Ademi's counsel was responsible for representing the interests of all of them.

The record does not reveal whether more than twenty-seven opt-in notices were sent, but it is very likely that they were, since it is rare for everyone who is sent an opt-in notice to exercise his right to join a collective action. Assuming arguendo that some recipients of the opt-in notice declined to get involved, their identities were nonetheless also known to the Lee Litigation Group, Ademi's counsel. Because the failure to opt into the FLSA collective action did not bar any individual from pursuing claims under the New York Labor Law, I will refer to anyone who was sent an opt-in notice but who did not respond to it as a "known Rule 23 Class Member."

On September 10, 2024 – after the commencement of the ABC Proceeding, but before it concluded – Ademi moved for certification of a class pursuant to Fed. R. Civ. P. 23 as to all NYLL claims asserted against Central Park Boathouse and Dean Poll, Dkt. No. 73, as well as for partial summary judgment against Defendants as to his claim based on the notice requirements of the NYLL, Dkt. Nos. 76, 77.

As noted above, the Assignee agreed to pay Ademi $1,000 in full satisfaction of his (Ademi's) claims against Central Park Boathouse on October 24, 2024. *See* Dkt. No. 98-3. That resolution was incorporated into the Assignee's final accounting, and Ademi stipulated that he had no objection to the final accounting on November 19, 2024. *See* Dkt. No. 98-4. Therefore, Ademi's personal claims, under both state and federal law, were settled.

On November 7, 2024, Defendants moved to dismiss the complaint in its entirety, asserting, "Plaintiff has availed himself of the jurisdiction of the New York Court's [sic] by asserting a claim in the assignment for the benefit of creditors proceeding and Plaintiff's claim should be resolved in that forum." Dkt. No. 93-1, ¶ 1. Two weeks later, on November 21 – as soon as the ABC

6

Proceeding concluded – Central Park Boathouse moved for summary judgment. Dkt. No. 97. It argued that Ademi's claim against it was barred by *res judicata*, because the New York State Supreme Court had since "approved Assignee Sari B. Placona's Final accounting in its entirety under which Ademi was to be paid $1,000.00 in satisfaction of his claims and declared Central Park Boathouse, LLC dissolved under state law." Dkt. No. 97, at 6.

Defendant Dean Poll also moved to dismiss the complaint, Dkt. No. 98 at 6-7, and subsequently for summary judgment, Dkt. No. 97 at 13-17. Poll sought dismissal of all claims asserted against because he was not the "employer" of Ademi or any class members (whether conditionally certified or not) under either the FLSA or the NYLL.

Plaintiff opposes both of Defendants' motions, Dkt. Nos. 94, 102, on multiple grounds – including that the ABC Proceeding neither adjudicated his claims nor discharged them, as would have been the case if the corporate Defendant had filed in bankruptcy; that the ABC Proceeding had no impact on any of the claims asserted against Defendant Poll, who did not assign his assets for benefit of creditors; and that there existed a genuine dispute of material fact as to Poll's status as an "employer" under the relevant laws.

The Court has waited for some months to see what if any further actions might be taken in connection with the ABC Proceeding, but that Proceeding, it seems, has concluded. It is, therefore, time to dispose of the pending motions, which are decided in accordance with this opinion.

## DISCUSSION

Because we are dealing with these motions alongside Ademi's personal claims, the FLSA claims of the twenty-seven Opt-in Plaintiffs, and the NYLL claims of putative members of an as-yet-uncertified class, the discussion is more complicated than would ordinarily be the case. But

because different people stand in different positions, it is imperative that we distinguish clearly among them.

### A.    Ademi's FLSA and NYLL Claims Asserted Against Dean Poll and the Opt-in Plaintiffs Are Dismissed

Poll moves for summary judgment, Dkt. No. 97, dismissing all the claims asserted against him on the ground that he is not the "employer" of the plaintiff employees of Central Park Boathouse. Insofar as that motion is addressed to the claims of Ademi and the Opt-in Plaintiffs, it is GRANTED; insofar as it is addressed to a NYLL claim that could be asserted by a class member who is not one of the twenty-eight individual parties plaintiff in the collective action, it is DENIED.

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering cross-motions for summary judgment, "all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

Summary judgment is appropriate where there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50 (1986). A dispute concerning material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir. 1992) (quoting *Anderson,* 477 U.S. at 248).

Poll argues that he is entitled to summary judgment because Ademi has failed to offer any evidence creating a triable issue as to whether Poll qualifies as an "employer" under the NYLL and FLSA. Dkt. No. 97 at 13-17.  If Poll is not a statutory employer, then he cannot be held individually liable for any violations of either the FLSA or the NYLL.

The term "employer" is defined coextensively under the FLSA and the NYLL. To decide whether an individual qualifies as an employer under both statutes, a court considers four relevant factors: "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records." *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984) (internal quotations omitted).

In his Answer to the Complaint, Poll admitted, as alleged in Dkt. No. 1, ¶ 10, that he was "an owner of Boathouse," Dkt. No. 15, ¶ 10. However, he denied exercising operational control over the employees of Central Park Boathouse, exercising hire-fire power, supervising and controlling work schedules and conditions of employment, and determining the rate and method of employee compensation. *See* Dkt. No. 15, ¶ 10.

Since Poll did not admit the factors that would make him an employer of Ademi and other employees like him, it was up to the plaintiffs to elicit evidence to support that contention. They failed to do so.

Poll was deposed in this case on June 17, 2024. Dkt. No. 79-2, at 1. But he was deposed pursuant to Fed. R. Civ. P. 30(b)(6) as a representative of Central Park Boathouse. Dkt. No. 79-2, at 1. That means he testified strictly on behalf of the corporation. "It is well settled that a witness appearing pursuant to a Rule 30(b)(6) notice has a unique status and testifies as the entity, not as an individual . . . a deposition pursuant to Rule 30(b)(6) is substantially different from a witness's deposition as an individual." *Loc. 3621, EMS Officers Union, v. City of New York*, No. 18CV4476LJLJW, 2023 WL 8804257, at *4 (S.D.N.Y. Dec. 20, 2023) (internal citation and quotations omitted). Therefore, Poll's answers to the questions asked during his deposition are of

little to no value in raising a genuine issue of fact concerning his personal responsibility, if any, for violations of the relevant labor laws.

The record does not contain evidence indicating that Poll exercised hire/fire power over the tipped front-of-house employees (like Ademi) at Central Park Boathouse. Ademi testified at his deposition that he was "interviewed" and "hired" by Anthony Walton, one of the managers at the venue, and Dean Poll. Dkt. No. 103-1, at 2-3. Poll did not expressly deny this; he testified only that he had no memory of knowing Ademi. *See* Dkt. No. 97-6, at 26. On a summary judgment motion, where I must view the evidence most favorably to the non-movant, I must infer that Poll was present at Ademi's job interview and participated in the decision to hire him.

However, there is no evidence whatever that Poll was involved when Ademi was fired in 2021, only to be reinstated after Union intervention[2], *see* Dkt. No. 103-1, at 75-76, 85-86. There is no evidence that Poll was "in the room" when Ademi's employment was terminated, or that Poll played any part in making that decision. Ademi speculates that he did, Dkt. No. 103-1, at 72, but speculation is not evidence. Nor is there any evidence that Poll had any involvement with the Union's efforts to reinstate Ademi.

There were twenty-seven other named plaintiffs who were, by the time these motions were made, parties to the case to the extent of the FLSA claims. These twenty-seven individuals were as much clients of Lee Litigation Group as Ademi was. But Ademi did not offer evidence from any of them about whether Poll had any role in hiring them, or (if they were fired prior to the restaurant's closure) in terminating their employment.

---

[2]    From Ademi's deposition, it appears that he was fired for some short period in 2021 and then rehired following intervention by the New York Hotel & Motel Trades Council, AFL-CIO ("the Union"). *See* Dkt. No. 75-76; 85-86. Ademi then continued to work at Central Park Boathouse until it closed; he ultimately lost his job because the facility went out of business in October 2022. *See* Dkt. No. 103-1 at 15.

In short, evidence that Poll routinely exercised hire-fire power over employees at Central Park Boathouse is sadly lacking.

Moreover, hire-fire power is not the only indicium of an employer, and even if he was present at Ademi's interview, there is not a scintilla of evidence in the record that Poll was responsible for any of the other things that would make one an "employer" under *Carter.* There is no evidence that he prepared employee schedules, tracked employees' sick and vacation days, resolved issues among employees, managed employee complaints, ensured that Union rules were followed, assigned daily tasks, or provided notices related to wages and raises. *See* Dkt. No. 97-4. In fact, Ademi admits that when he asked Poll about additional work hours, he was told to raise the matter with one of the managers of the restaurant – Poll did not resolve the matter. Dkt. No. 104, ¶ 22.

Poll did negotiate the collective bargaining agreement ("CBA") between Central Park Boathouse and the Union. Dkt. No. 31-1. The CBA, not the Central Park Boathouse, set the minimum pay rates and scheduled wage increases for Central Park Boathouse employees, *see* Dkt. No. 97-6 at 25; and there is no evidence that the minimum wage at the Boathouse differed from the minimum wage at other restaurants and event sites whose employees belonged to the same union. As for raises, the CBA left Central Park Boathouse free to give them or not, in its discretion. *see* Dkt. No. 31-1, art. 5. There is no evidence in the record that Poll ever participated in deciding whether Ademi, or any other employee, would get a raise.

The documents in Ademi's employment file – which contains pay stubs, tip credit notices and acknowledgement of pay rate and payday pursuant to Section 195.1 of the NYLL. *See* Dkt. No. 97-14 – corroborate Poll's lack of involvement in the day-to-day supervision of Central Park

Boathouse employees. The managers, not Poll, signed off on the scheduling requests for vacation time and handled complaints and Union issues. *See* Dkt. No. 97-14, 97-15, 97-16.

Ademi's counsel also submitted pay stubs and wage notices from the employment files of the twenty-seven Opt-in Plaintiffs he was representing; *see* Dkt. 79-3 through 79-25. Those stubs, like the documents in Ademi's file, contain no evidence that Poll did for any of them the things a *Carter* "employer" would do.

In short, Plaintiffs have made no serious effort to satisfy the Court that there exists a genuine issue of material fact about Poll's status as an employer under the relevant legal test.

Ademi nonetheless argues that there is a genuine dispute of material fact as to Poll's status as an "employer," for two reasons. Neither is persuasive.

*First*, as to himself personally, Ademi contends that the signatures on two of the documents in his employment file (out of roughly 63 documents in the file) are either "illegible or more consistent with a signature by Defendant Poll." Dkt. No. 104, ¶ 8.

But illegible signatures are not sufficient to raise a genuine issue of fact concerning Poll's status as the employer of Ademi, let alone of his twenty-seven co-plaintiffs. A simple interrogatory or request to admit – or even a question asked during Poll's 30(b)(6) deposition – could have clarified whether the signatures to which Ademi points were in fact Poll's. Apparently, no such questions were asked, because the record contains no clarifying evidence.

*Second*, Ademi directs the Court to testimony in Poll's 30(b)(6) deposition, which he contends contains an admission from Poll that he had the authority to hire and fire employees and determine work schedules if he chose to do so:

> Q. If you wanted to, you could hire or fire employees, right?
> A. Yes, well, provided it's within the reason of the collective bargaining agreement which we had to adhere to.
> …

> Q. And you can also give employees a day off for bereavement if they request it?
> A. If it's in the collective bargaining agreement, yes.
> …
> Q. And you have access to all the employees' records at the Boathouse, right?
> A. I believe we do, yes.
> …
> Q. Are you the person who is responsible for ensuring that employees are paid accurately or is it another person?
> A. Am I the one who ensures, I think I take the responsibility ultimately that they're paid properly.

Dkt. No. 79-2, at 24-26, 31.

But as noted above, Poll's answers were made on behalf of the corporate Defendant, not in his individual capacity. The "you" in counsel's questions at a 30(b)(6) deposition is not Poll; it is the corporation he represents. Poll's representative status is actually reflected in the tenor of some of his responses ("I believe *we* do, yes"). Moreover, all that Poll said in response to the questions quoted above was that Central Park Boathouse adhered to the terms of the CBA between it and its workers – not that he personally did anything at all, other than ultimately ensure that the workers got paid. He did not testify that he actually paid them, or that he signed their checks.

Nothing prevented Ademi's lawyer from noticing Poll for his deposition personally, and nothing prevented him from asking questions with the caveat that he was now addressing Poll personally, rather than as a representative of the corporate Defendant. But the record does not disclose that counsel did those things. As a result, counsel failed to develop the record he needed to defeat a motion for summary judgment. The record evidence that Ademi has presented is insufficient to render Poll's status as an "employer" a triable issue under the *Carter* factors.

This is consistent with the result in other cases. In *Tapia v. Blch 3rd Ave. LLC*, No. 14-CV-8529 (AJN), 2016 WL 4581341, at *3, *8 (S.D.N.Y. Sept. 1, 2016), an individual defendant was found not to be an "employer" for NYLL and FLSA purposes, even though he owned a 50% stake in the restaurant, came to the restaurant on a daily basis, gave instructions to the managers,

13

supervised the staff in cleaning and organizing the restaurant and participated in hiring, albeit not "in a meaningful way." That is far more evidence of involvement in the everyday affairs of the restaurant than what has been shown here with respect to Poll.

Similarly in *Hernandez v. 2400 Amsterdam Ave. Realty Corp.*, No. 22 CIV. 3094 (AT), 2024 WL 1312345, at *3 (S.D.N.Y. Mar. 26, 2024), the defendant was held not to be an "employer" under the NYLL and FLSA where he rarely spoke to employees and there was no evidence that he was involved in hiring and firing, in setting pay rates, in supervising or controlling the plaintiffs' work schedules, giving out work assignments or maintaining corporate records.

So too here. There is insufficient evidence in the record to raise a genuine issue of fact about whether Poll qualifies as an "employer" under either of these statutes. Accordingly, the claims asserted against Poll by Ademi and the twenty-seven other identified members of the FLSA Collective (the Opt-in Plaintiffs) are DISMISSED.

This is true whether those claims arise under the FLSA or the NYLL. That is because the definition of "employer" is the same under both statutes. The Second Circuit has held that issue preclusion applies if "the same issue of fact or law [has been] actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Kaplan v. Reed Smith LLP*, 919 F.3d 154, 159 (2d Cir. 2019) (internal quotations omitted). For example, in *Wyly v. Weiss*, the Second Circuit held that issue preclusion could support an injunction where members of a class action brought a state court action alleging that class counsel had committed legal malpractice. 697 F.3d 131, 144 (2d Cir. 2012). The Second Circuit concluded that the district court's decision that class counsel's fee award was fair and reasonable "resolved one of the *elements* of a malpractice claim—namely, counsel's deficient performance." *Id.* at 141. The dissatisfied class members' lawsuit was therefore "a collateral attack on the District

14

Court's findings that [the settlement agreement at issue] was fair, reasonable and adequate, that class counsel was entitled to an award of attorneys' fees, and that those fees were fair and reasonable." *Id.* at 142 (internal quotations omitted).

Here, because the definition of "employer" under the NYLL is coextensive with the definition of "employer" under the FLSA, the decision resolving that issue for FLSA purposes necessarily also resolves it for NYLL purposes – at least, for the twenty-eight individuals who were before the Court and who had a full and fair opportunity to litigate the question. All of the Opt-in Plaintiffs became full parties to the lawsuit from the time they opted in: "opt-in plaintiffs become party plaintiffs upon filing their consents to sue; nothing further is required." *Zambrano v. Strategic Delivery Solutions, LLC*, 2021 WL 4460632, at *8 (citing *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 n.10 (3d Cir. 2016) and *Mickles v. Country Club, Inc.*, 887 F.3d 1270, 1278 (11th Cir. 2018) and collecting cases). "[T]he consents filed by [the Opt-in Plaintiffs]… determines their status as plaintiffs, on equal footing with Lead Plaintiffs but bringing their own individual cases." *Id.* (citing *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1105 (9th Cir. 2018)); *see Bethel v. BlueMercury*, No. 21 Civ. 2743, 2022 WL 3594575, at *11 (S.D.N.Y. Aug. 22, 2022). This means that, when Poll moved for summary judgment, the Opt-in Plaintiffs had the same obligation as Ademi – to respond to that motion with evidence raising a genuine issue of material fact that Poll was their employer. Those individuals were afforded a full and fair opportunity to litigate the issue. Because the lawyer who was representing them failed to introduce evidence that would raise a genuine issue of fact on the question, resolution of Poll's motion for summary judgment, whether under federal or state law, binds the Opt-in Plaintiffs just as much as it binds Ademi.

The same is not true of the claims that absent members of a NYLL class who did not opt into the FLSA collective action might wish to assert against Poll – including the "known Rule 23 Class Members." We will return to that later in this opinion.

### B.    Ademi's Claims Against Central Park Boathouse Are Dismissed

The New York State Supreme Court's approval of the Assignee's final accounting, together with Ademi's stipulation that he had no objection thereto, ends this matter as between Ademi, as an individual, and Central Park Boathouse.

"The doctrine of *res judicata*, or claim preclusion, holds that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Monahan v. N.Y. City Dep't of Corrs.,* 214 F.3d 275, 284 (2d Cir. 2000) (internal citations omitted).

The parties agree that *Freeman v. Marine Midland Bank-New York,* 419 F. Supp. 440 (E.D.N.Y. 1976) is the only case in this Circuit concerning the *res judicata* or preclusive effect to be attached to the allowance of a claim in an ABC proceeding. In *Freeman*, the plaintiff was the Assignor (the party in Central Park Boathouse's shoes). He had initiated an ABC Proceeding after defaulting on loans to the defendant bank. *Id.* at 443-46. The bank asserted a claim against Freeman in the ABC Proceeding. Freeman objected to the claim, alleging that the loans were invalid because they violated federal margin requirements, but the bank's claim was allowed over the plaintiff's objections. *Id.* Freeman subsequently sued the bank in federal court, alleging the same violation of federal margin requirements. The district court held that "the allowance of the subject claim by virtue of the [state court's] Orders settling the assignee's...accounts constituted a final judgment on the merits," but further held that "equity and public policy principles" tempered application of

the doctrine of *res judicata*. *Id.* at 448. Under the "novel circumstances of [that] case,"[3] the district court concluded that "[t]o mechanically apply res judicata at this stage would impose a manifest injustice upon the plaintiff." *Id.* at 448-49. For that reason, summary judgment on the grounds of *res judicata* was denied: the court found that there was a genuine issue of material fact as to whether the plaintiff could have presented a defense respecting the defendant bank's alleged violation of federal margin requirements in the ABC Proceeding,

The instant case differs in so many material respects that *Freeman* effectively teaches very little. In this case we do not have an Assignor trying to litigate a claim that may or may not have been fully and fairly litigated in the very ABC Proceeding he commenced; rather, we have a situation in which our Plaintiff, Ademi, having asserted a claim against the corporate Assignor's estate,[4] agreed to settle that claim in exchange for the payment of $1,000 – a negotiated compromise "to bring finality to this matter." Dkt. No. 98-3. Not only did Ademi accept the tendered payment, he executed a stipulation affirming that, having obtained a promise that documents would be retained, he had no further objection to the entry of the final accounting. *See* Dkt. No. 98-4. Ademi could have persisted in pursuing his claim; he could have requested adjudication of the claim. But he did not; he elected to settle instead. The record reflects a voluntary and affirmative waiver by Ademi of his claims against Central Park Boathouse; he cannot go back on that decision now. Ademi's individual claims against Central Park Boathouse, whether asserted under state or federal law, are, accordingly, DISMISSED with prejudice.

---

[3] The unique circumstances alluded to were the district court's doubt that Freeman's objection to the bank's claim had actually been considered in the ABC Proceeding. Here we know that Ademi's personal claim was considered by the Assignee, since she settled it.

[4] Ademi's situation in the ABC Proceeding is comparable to the defendant bank's, not the plaintiff's.

However, the ABC Proceeding did not result in the compromise of any claim against Central Park Boathouse by any other individual plaintiff – specifically, not the FLSA claims of the twenty-seven individuals whose identities were known to Ademi and his lawyer, and who were engaged in active FLSA litigation against Central Park Boathouse along with Ademi, but who were not identified in the ABC Proceeding and to whom no offer of compromise was ever made. Nor did Ademi compromise any NYLL claims against Central Park Boathouse that might be asserted by either the Opt-in Plaintiffs or by any absent member of the putative but uncertified NYLL class. The Assignee's settlement offer extended only to "his" (*i.e.,* Ademi's) claims; she offered to resolve Ademi's claim, not the claim of any other putative class member. Dkt. No. 98-3. Claims that might be asserted by anyone else against Central Park Boathouse (or claims that have been asserted, in the case of FLSA claims for the twenty-seven Opt-In Plaintiffs) thus cannot be dismissed.

But Ademi's individual claims against Central Park Boathouse, whether they arise under the NYLL or the FLSA, are dismissed. This has implications for the other putative (Rule 23) and actual (FLSA collective) class members.

## C.    Ademi's Motion for Rule 23 Class Certification Is Denied

The dismissal of Ademi's personal NYLL claims against Central Park Boathouse bears on Ademi's motion for certification of a Fed. R. Civ. P. 23 class to pursue the claims asserted against the Central Park Boathouse under the New York Labor Law.

A fundamental prerequisite to certification is that the proposed class representative maintain a live, personal claim and be able to adequately represent the interests of the class. *See* Fed. R. Civ. P. 23(a)(3)-(4). Here, Ademi has compromised his claim against Central Park Boathouse, leaving him without the personal stake necessary to represent others. And even if Ademi had not forfeited his claims against Central Park Boathouse, his decision to proceed as a

creditor in the ABC Proceeding means that his circumstances are no longer typical of the proposed class, and he cannot adequately advance the interests of a class. Accordingly, Ademi's Motion for Class Certification insofar as it is directed to the NYLL claims against Central Park Boathouse must be DENIED.

The motion must also be denied because Ademi's and his counsel's handling of the claims of other identified putative class members in connection with the ABC Proceeding establishes that neither Ademi nor his attorneys could adequately represent the proposed Rule 23 class.

Usually concerns about adequacy of representation raised in connection with class certification motions are hypothetical, but in this case, we have hard evidence that neither Ademi nor his attorneys has adequately represented the interests of anyone except Ademi. Indeed, they have already compromised the interests of absent class members as a result of their conduct in connection with the ABC Proceeding.

At the moment the ABC Proceeding was filed, Ademi and his attorneys knew the identity of at least twenty-seven of those putative class members. Ademi's counsel had already received and transmitted to this Court the consent to sue forms from the twenty-seven Opt-in Plaintiffs in the conditionally certified FLSA Collective. Those individuals would of course also be members of the purported Rule 23 class. Individual claims under the NYLL (and the FLSA) could have been asserted at least on behalf of those individuals in the ABC Proceeding. They were also the clients of Lee Litigation Group, and that law firm owed them the duty to represent their interests, no less than it owed Ademi such a duty.

Furthermore, as discussed above, it is likely that FLSA opt in notices were sent to more than the twenty-seven persons who actually opted in. Although those individuals were not yet clients of Lee Litigation (unlike the twenty-seven opt ins), the identities of everyone who was sent

19

an opt-in notice were also known to Ademi's counsel as well. And those persons were putative members of the Rule 23 opt-out class asserting class under the New York Labor Law.

But although Ademi purported to file his claim in the ABC Proceeding on behalf of himself and "purported Class Members," no effort was made to advise the New York State Supreme Court of the names or addresses of any of those persons – not the twenty-seven individuals who had already indicated that, by opting into the collective action, they wished to assert claims of their own against Central Park Boathouse; and not any "known Rule 23 Class Member" who had declined to opt into the collective action. Nor is there evidence that Lee Litigation Group made any effort to notify any of these individuals – some of whom were as much its clients as Ademi was – about the pendency of the ABC Proceeding. As a result, the "putative class members" were not advised about the possibility that the assets of Central Park Boathouse would likely be dissipated in connection with the resolution of that proceeding. Knowing this would have given them a chance to assert, and either compromise or pursue, their own individual claims.

Instead, all Ademi and his lawyers did was file a claim on behalf of Ademi and putative unidentified "Class Members."

And then, Ademi and his attorney compromised Ademi's personal claim ("his claim"), which allowed Ademi to receive a small settlement out of the assets of Central Park Boathouse without giving anything to any other putative class member – including specifically the twenty-seven people this Court had conditionally certified Ademi and Lee Litigation Group to represent.

Now that the ABC Proceeding has wound up and all of the assets of Central Park Boathouse have been distributed, these individuals likely have no meaningful opportunity to recover anything from the corporate Defendant that employed them. The fact that they can still sue the dissolved corporation is meaningless if there is no money available to compensate them for their claims.

These facts prove that Ademi would not be an adequate class representative for Rule 23 purposes. He settled his own claim without taking any steps to obtain anything for the other putative members of the class.

The same facts establish beyond peradventure that Lee Litigation Group cannot be certified as class counsel. The Advisory Committee's Note to the 2003 amendment to Fed. R. Civ. P. 23 clarifies that the Rule "articulates the obligation of class counsel to represent the interests of the class, as opposed to the potentially conflicting interests of individual class members." *See, e.g., Rambarran v. Dynamic Airways, LLC*, 2015 WL 4523222, *9 (S.D.N.Y. 2015) (denying certification where counsel "demonstrated a lack of ability to litigate on behalf of the class"). Here, Plaintiff's counsel already failed to provide twenty-seven individuals with adequate representation, and at least some of their claims (their FLSA claims against Poll) have been dismissed. Lee Litigation has also failed to look out for the interests of members of the not-as-yet certified Rule 23 class who were known to it. It would be impossible for counsel to convince me that they could represent adequately the Rule 23 class they here seek to represent.

Because there is no adequate representative for the proposed Rule 23 NYLL class, the motion for class certification is DENIED.

### D.    The Implications of the Above for the FLSA Collective Action

So, what happens now?

First, with respect to the FLSA Collective Action: The FLSA Collective Action cannot proceed against Dean Poll, because his motion for summary judgment dismissing the claims of all the FLSA Collective Plaintiffs against him is GRANTED.

21

The FLSA Collective can proceed against Central Park Boathouse, but not with Ademi as the representative plaintiff – because he settled his claim and is no longer similarly situated to the rest of the Opt-in Plaintiffs.

In the Second Circuit, there is a two-stage process for deciding whether certification is proper. *See, Myers*, 624 F.3d at 554–54; *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 660 (S.D.N.Y. 2013); *Lynch*, 491 F. Supp. 2d at 367–68. We have only gone through the first stage. During the first stage, the court looks at the pleadings and affidavits filed with the court to determine if the plaintiff who brought the lawsuit satisfies "the minimal burden of showing that the similarly situated requirement is met." *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (citing *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)); *see also, Myers*, 624 F.3d at 555; *Hamadou*, 915 F. Supp. 2d at 660. If the court finds that the plaintiff has shown that potential opt-in employees are similarly situated, the court will conditionally certify the collective action, send notice to the potential collective plaintiffs, and extend to those potential plaintiffs an opportunity to opt-in to the collective action. *See, Hamadou*, 915 F. Supp. 2d at 660; *Iglesias–Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 367 (S.D.N.Y. 2007).

At the preliminary certification stage, I determined that Ademi satisfied his minimal burden of showing that he is "similarly situated" to the proposed class members with regard to his FLSA claims. Dkt. No. 39. All of the proposed FLSA collective members were tipped front-of house employees. In his declaration, Ademi set out a factual basis for his claims of common policies of depriving tipped front-of-house workers of wages, failing to reimburse workers for uniform maintenance, and deducting improper meal credits. Ademi adequately alleged that he and his proposed class members were subjected to common wage practices that violated the FLSA. Having concluded that Ademi had made a sufficient showing, I decided that he could not just pursue his

own claims but could proceed in a representative capacity for any other persons who decided to opt-in to the conditionally certified class.

Ademi's decision to settle his own claim means that he can no longer serve as representative plaintiff in the FLSA Collective. But Ademi's decision to settle his own claim against Central Park Boathouse has no impact on the ability of the twenty-seven Opt-in Plaintiffs to pursue their own claims against Central Park Boathouse. Of course, it would appear to be a fool's errand, since Central Park Boathouse no longer has any assets and has been dissolved as an entity. But I cannot deprive these individuals of the right to try to sue the dissolved corporation if they wish to do so.

But if the collective action is to continue, we need a new Named Plaintiff. In the ordinary course I would ask counsel to see whether one or more of the twenty-seven individual Opt-in Plaintiffs wishes to move to be substituted in as the Named Plaintiff in place of Ademi, who has settled his own claim. Substitution of one or more Opt-in Plaintiffs for someone who is no longer qualified to serve as a Named Plaintiff is "a particularly simple procedural matter" because the Opt-in Plaintiffs "are already full parties for all purposes" and substitution "is unlikely to prejudice the defendant, [who] is already on notice of the claims of the new named representative." *See Aguilar v. Advanced MEPF Servs. Corp.*, No. 19 Civ. 5014, 2022 WL 598148, at *3 (E.D.N.Y. Jan. 20, 2022).

But in the circumstances, substitution is anything but a "simple procedural matter." Before we can continue with the FLSA Collective's case against Central Park Boathouse, the Opt-in Plaintiffs must be notified, not just about their rights, but about the dissolution of Central Park Boathouse and the distribution of its assets. They also need to be apprised of the fact that the lawyers who are presently representing them in the FLSA Collective failed to assert any claim on

their behalf in the ABC Proceeding, at a time when assets were available. That fact, which cannot be hidden from the Opt-in Plaintiffs, might well influence their decision about whether to allow the Lee Litigation Group to continue to represent them in connection with their FLSA claim.[5] And that means that Lee Litigation Group is not well situated to provide its clients with the requisite notice.

Of course, if some or all of the twenty-seven Opt-in Plaintiffs want Lee Litigation Group to continue pursuing an FLSA claim against Central Park Boathouse on their behalf, they have the right to do that, too – and because it is highly unlikely that any other lawyer would wish to step into the representation at this juncture, this Court would not allow Lee Litigation Group to withdraw from the representation, unless the individual plaintiffs asked me to do so.

Under these highly unusual circumstances, the Court, rather than counsel, will be crafting the necessary notice. The Lee Litigation Group, which continues to represent the Opt-in Plaintiffs, will be responsible for sending it to the twenty-seven Opt-in Plaintiffs – to their clients. The Lee Litigation Group will have ten business days from the date the Court provides it with a form of notice to send the notice and to file proof of service with the Court.

Of course, Central Park Boathouse could move for decertification of the FLSA Collective, on the ground that the claims of the Named Plaintiff have been dismissed. But Central Park Boathouse has made no such motion, and I will not *sua sponte* de-certify the conditionally certified class.

---

[5]   I have to recognize the very real possibility that the twenty-seven Opt-in Plaintiffs are in an adversarial posture to Lee Litigation Group, in that they may have a claim against their attorneys for failing to represent their interests along with Ademi's.

### E.    The Implications of the Above for the Rule 23 NYLL Class

The situation is quite different with respect to the putative Rule 23 class that the Court has declined to certify.

Absent members of a putative Rule 23 class, unlike Opt-in Plaintiffs in an FLSA collective action, do not become "parties" to the lawsuit for former adjudication purposes unless and until a class is certified. Decisions in putative class actions are not binding upon unnamed putative class members before those classes are certified. *Smith v. Bayer Corp.,* 564 U.S. 299, 215 (2011). So, all putative members of the NYLL class – which is to say, all non-exempt front-of-the-house tipped Central Park Boathouse employees who were employed anytime between October 6, 2016, and December 31, 2022 – are now masters of their own NYLL claims against Central Park Boathouse. This includes both the twenty-seven Opt-In Plaintiffs in the collective action and other persons who fall within the definition of the Rule 23 class, even if they chose not to opt into the FLSA collective.

Moreover, as was discussed above, *see* Section A, *supra*, putative Rule 23 class members other than the twenty-seven Opt-in Plaintiffs are not bound by the decision that Dean Poll is not their "employer" for NYLL purposes. So these individuals (but not the Opt-In Plaintiffs) are free to pursue a claim against Poll on that basis.

However, the truly absent class members (unlike the twenty-seven Opt-in Plaintiffs, who are still represented by the Lee Litigation Group for FLSA purposes) do not presently have counsel. Nor do they have reason to know that they now must take steps to protect their rights if they wish to do so.

The absent class members need to be notified that the proposed Rule 23 NYLL class was not certified; that they are free to bring their own individual NYLL claims against Central Park

25

Boathouse; that if they are not among the twenty-seven persons who opted into the FLSA Collective two years ago they are also free to bring NYLL claims against Poll; that they can hire a lawyer to sue individually on their behalf or they can proceed *pro se*; but that, in order to protect their rights, they must either commence a new lawsuit or move for leave to intervene in this action. *See Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983). The absent class members also need to be told about the demise of the Central Park Boathouse, LLC; the failure of the Lee Litigation Group to assert claims on their behalf in the ABC Proceeding, and the results of the other dispositive motions in this action. All of that information is necessary to enable them to make a reasoned decision about whether to proceed. And while individual plaintiffs might wish to retain the Lee Litigation Group to pursue their claims individually, they need to be told that this law firm will not be certified to represent any class in this matter.

Another thing these absent class members need to be told is about the statute of limitations. The statute of limitations was tolled on the NYLL claims of all absent class members from the date the lawsuit was filed (October 6, 2022) and the toll has persisted until the date of this decision (September 23, 2025). *See Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983) ("Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action."). As of today, the statute of limitations begins to run again.

The Court concludes that the best and most practicable way of giving notice to the absent class members is to send notice to the last known address of everyone who received the notice of the opportunity to opt-in to the FLSA Collective Action. Presumably all of those individuals would be members of the NYLL class, and presumably Defendants long ago provided the Lee Litigation

26

Group with the names and last known addresses of all the tipped front-of-house employees at Central Park Boathouse for the relevant time period. If that is not true, I need to be so advised.

I direct the Lee Litigation Group to provide the Court, within ten business days, with the names and last known addresses of everyone who received a notice of the right to opt into the FLSA Collective Action. Because Lee Litigation Group is not in a position to craft an appropriate notice, the court will do so and will send it – but at Lee Litigation Group's expense.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion to Certify Class and Appoint Class Counsel, Dkt. No. 73, is DENIED; Plaintiff's Motion for Partial Summary Judgment, Dkt. No. 76, is DENIED; Defendants' Motion to Dismiss, Dkt. No. 93, is DENIED AS MOOT; and Defendants' Motion for Summary Judgment, Dkt. No. 97, is GRANTED IN PART, with respect to the claims against Dean Poll and Ademi's individual claims against Central Park Boathouse, and DENIED IN PART, with respect to the claims of the Opt-in Plaintiffs (FLSA Collective Plaintiffs) against Central Park Boathouse. The Clerk of Court shall remove all these motions from the Court's list of open motions.

This constitutes the decision and order of the Court. It is a written decision.

Dated: September 23, 2025

_____
U.S.D.J.

BY ECF TO ALL COUNSEL